Anthony Paduano (AP 8400)
Jordan D. Becker (JB 3636)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100
Facsimile: (212) 785-9099

Attorneys for Respondent Gek Lang Lee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOON CAPITAL MANAGEMENT LP, :

            Petitioner, :

    -against- :    No. 07 CV 6002 (JGK)

GEK LANG LEE, :

            Respondent. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF GEK LANG LEE

GEK LANG LEE declares under penalty of perjury:

1.    I submit this Declaration on personal knowledge in opposition to the attempt by Moon Capital Management, LP ("Moon Capital") to prevent me from working for Pramerica Real Estate Investors (Asia) Pte Ltd ("Pramerica"). Moon Capital—which I have never worked for—has no basis for preventing me from working for Pramerica because I will not be competing with Moon Capital. Contrary to the allegations in the Declaration of John Moon, the business of Moon Capital and

Pramerica are quite different.

Background

  2.  I am 42 years old and live with my husband and three children (ages 13, 10 and 6) in Singapore. I am the primary wage earner in my household; my husband is currently unemployed and is the principal caregiver for our children. My contacts with New York are extremely limited. In fact, I was never employed by the Moon Capital entity that is the Petitioner in this case. Rather, I was employed by a Singapore entity, Moon Capital Singapore Pte. Ltd. ("Moon Capital Singapore") based and authorized to do business in Singapore. A copy of my initial offer letter—stating that I would be employed by Moon Capital Singapore, is attached hereto as <u>Exhibit A</u>, and a copy of my former business card is attached hereto as <u>Exhibit B</u>. I have made a few trips to New York at John Moon's insistence and, at its direction, attended a few conferences in New York. Because Mr. Moon is based in New York, I have, by necessity, communicated with New York during my employment. However, I have always worked in Singapore. I have never worked for Petitioner in the United States and I hold no licenses or visas that would allow me to work in the United States. I was paid by Moon Capital Singapore in Singapore Dollars (<u>Exhibit C</u>).

  3.  I have lived my entire life in Singapore and am a citizen of Singapore. Although I have a degree in chemistry and biochemistry, after I graduated from university, I began working in the financial industry while I obtained my Chartered Financial Analyst designation. My first job as a securities analyst was with a local

firm, Phillip Securities, and then I moved to W.I Carr, where I was an analyst for real estate securities and ran the Singapore office's equity business. I then moved to UBS, where I headed the research team and built the institutional research team.

4.    In 2002, I decided to take a break from full time employment for about 3 years, and except for a short time working part time for UBS, I was out of the full time job market.

My Employment by Moon Capital Singapore

5.    In 2005, I was hired by Moon Capital Singapore to help manage its global real estate and construction portfolio, which is only a portion of the business of Moon Capital. My job at Moon Capital Singapore was primarily to analyze potential investments. At Moon Capital Singapore, I did not have any customers or clients and did not execute transactions. In fact, virtually all of the transactions that I placed with traders were approved in advance by Mr. Moon, who on information and belief owns Moon Capital.

6.    Contrary to the allegations made by Mr. Moon, he did not provide me with all of my training and all of my contacts. In fact, I was involved in real estate securities investing as a research analyst for 12 years before I joined Moon Capital Singapore, and had many contacts in the industry. Further, as Mr. Moon admits, the universe of real estate companies is not large, and the names of these companies are not secrets—they are known to professionals in the market in Asia. Nor is it fair for Mr. Moon to assert that Moon Capital had unspecified special "business relationships"

with these companies; I have no idea what Mr. Moon is referring to. In fact, most of the contacts that I had were with the designated investor relations contacts, again, their identities are publicly available and widely known to the market.

7. I recently decided to leave Moon Capital Singapore and join Pramerica, which is also in Singapore. I was excited by the opportunity to work for a fund that was focused on real estate and would permit me to expand my expertise in this area to developed markets, among other things. I provided Moon Capital Singapore with 30 days advance written notice that I was leaving. However, I was surprised when Mr. Moon informed me that he would attempt to prevent me from working for Pramerica because he believed that I would be in competition with him. This is not the case. Nowhere in Mr. Moon's affidavit does he even try to explain how the businesses of Moon Capital and Pramerica are similar, beyond the basic point that both have real estate investments. In fact, they are very different businesses, and that is the main reason why I left Moon Capital Singapore.

Pramerica and Moon Capital are Not in Competitive Businesses

8. Moon Capital is a global asset management hedge fund, while Pramerica is a mutual fund focused only on real estate investments. These are very different models for asset management. As a hedge fund, Moon Capital is unregulated by any entity as far as I know. The Pramerica mutual fund is closely regulated and has strict diversification and geographic requirements imposed both by Singapore and U.S. regulators and the firm. Although Mr. Moon makes much of the statement on

4

Pramerica's website that it is a large real estate manager, there are enormous differences in the two companies' real estate investment business. A critical difference is that virtually all of Pramerica's business is in direct real estate investments ("hard assets" like buildings). In my experience, Moon Capital does not invest in those assets. Only a small portion of Pramerica's real estate investments are in buying and selling publicly traded securities; that is where I will have responsibilities.

9. Even within the buying and selling of real estate securities, where I will be focusing, the companies' businesses are quite different. Again, Moon Capital's business is global and focuses on emerging markets, while my work at Pramerica will be limited to Asian markets and will focus on developed markets. In fact, the Pramerica mutual fund is benchmarked to the S&P/Citigroup BMI Global Property Index, while Moon Capital is an absolute return fund with no benchmarking. My responsibilities will be centered primarily on determining whether to overweight or underweight the securities that are in this index (or to stay with the benchmark), which in the Asian sector are all in developed, not emerging, markets. This is completely different from anything I did at Moon Capital Singapore, because it was not a benchmarked fund.

10. In addition, my primary focus at Pramerica in the first quarter of my employment will be Japan because the index contains a significant amount of securities from Japanese companies. Moon Capital Singapore did not have any real estate investments in Japan, as far as I know. In other words, at Moon Capital

Singapore, I focused on emerging markets; at Pramerica, I will be focused on developed markets.

11. Also, at Moon Capital, I was required to hold both long and short positions; at Pramerica, I will only be permitted to hold long positions. Therefore, I will be working in a very different environment than when I worked at Moon Capital.

12. In addition, I currently do not have the necessary license from the Monetary Authority of Singapore ("MAS") to trade securities. I have been told that obtaining this license could take 60 days, or more. During that time, I would only be able to supervise other employees and begin to analyze the publicly-traded securities in the index that I will be concentrating on.

I Was Forced to Sign the "Letter Agreement"

13. I am also surprised at Mr. Moon's reliance on the Letter Agreement that I signed. The agreement was presented to me after I had been working at Moon Capital Singapore for nearly eight months. It was presented to me on the day that my bonus was to be announced. Although it was not stated, I understood that I would not get the bonus unless I signed. I was not given the chance to review the document with my own lawyer; only the company's lawyer was available to give me "advice." I was not able to negotiate any of the terms of the agreement at all. It was, in essence, forced upon me by Mr. Moon and for him to use it to prevent me from working for another company is simply unfair. I also note that the agreement refers to Moon Capital Management, LP, which I never worked for. I was only ever employed by

Moon Capital Singapore Pte. Ltd.

<u>I Have No Confidential or Trade Secret Information of Moon Capital</u>

14. When I left Moon Capital Singapore, I left behind all of my files entirely intact. Nothing proprietary or confidential to Moon Capital or Moon Capital Singapore is in my possession. I took no trade secrets or other information proprietary to Moon Capital Singapore. I have no intention of using any such information. I have no intention of soliciting any clients of Moon Capital or Moon Capital Singapore.

15. As such, I have not taken any steps to interfere with Moon Capital's ability to do its business.

<u>Any Injunction Will Be Terribly Damaging To Me and My Family</u>

16. However, an injunction that impairs my ability to work for Pramerica would likely cause me and my family significant hardship because my earnings are the primary source of support for me, my husband and three children. I cannot afford to be out of work for any length of time. Neither Moon Capital nor Moon Capital Singapore has offered to pay me for this 90-day period when they want me not to work. None of the local providers to my family will extend me credit for 90 days. Mr. Moon's actions against me are unfair and I believe he has sued me in New York, rather than Singapore, where I suspect they would not succeed.

17. I ask that the Court deny Moon Capital's attempt to prevent me from working for Pramerica.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 26, 2007

_____
Gek Lang Lee