Anthony Paduano (AP 8400)
Jordan D. Becker (JB 3636)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100
Facsimile: (212) 785-9099

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
MOON CAPITAL MANAGEMENT LP,
                                                            :
                          Petitioner,          No. 07 CV 6002 (JGK)
                                                            :
         -against-
                                                            :
GEK LANG LEE,
                                                            :
                          Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER


Anthony Paduano (AP 8400)
Jordan D. Becker (JB 3636)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100
Facsimile: (212) 785-9099

Attorneys for Respondent

June 26, 2007

TABLE OF CONTENTS

Page

Preliminary Statement.......................................................................2

ARGUMENT.................................................................................4

Point I
    NEW YORK IS NOT THE PROPER FORUM FOR THE EXTRAORDINARY
    RELIEF PETITIONER SEEKS..........................................................4

Point II
    PETITIONER'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF
    PENDING ARBITRATION MUST BE DENIED.................................5

        I.    Petitioner's Motion for Injunctive Relief Should Be Denied
            Because it Cannot Satisfy the Stringent Requirements for
            Obtaining Such Extraordinary Relief.................................6

            A. Petitioner Cannot Demonstrate A Likelihood Of
               Success On The Merits............................................7

               1. Petitioner Is Unlikely to Succeed In Proving Its Claim
                  That the Information in Question Is a Trade Secret....9

               2. The Restrictive Covenant is Unenforceable Under
                  New York Law.....................................................13

            B. Petitioner Cannot Demonstrate That It Will Suffer
               Irreparable Harm....................................................18

            C. Balancing the Risks of Harm Dictates Denial of an
               Injunction.............................................................20

            D. Issuance of an Injunction Against Petitioner Would Be
               Significantly Injurious to the Public............................22

POINT III
    SHOULD THE COURT ISSUE AN INJUNCTION,
    PETITIONER MUST POST A BOND............................................22

Conclusion................................................................................23

Respondent Gek Lang Lee ("Lee" or "Respondent") respectfully submits this Memorandum of Law in opposition to the motion of petitioner Moon Capital Management LP ("Moon Capital" or "Petitioner") for a temporary restraining order impairing Lee's ability to work in the financial service industry.[1]

## PRELIMINARY STATEMENT

The relevant facts are set forth in the accompanying Declaration of Gek Lang Lee, dated June 26, 2007 ("Lee Aff."), and are only summarized herein.

- Respondent is a 42 year old mother of three and is the primary wage earner in her household. <u>See</u> Lee Aff. at ¶ 2. She is a Singapore resident and has always lived and worked in Singapore. <u>See</u> <u>id</u>. at ¶ 2-3.

- Respondent was formerly employed by Moon Capital Singapore Pte. Ltd. ("Moon Capital Singapore"), a Singapore entity; she was never employed by Petitioner, Moon Capital. <u>See</u> <u>id</u>. at ¶ 2. She was hired by Moon Capital Singapore in 2005 to help manage its global real estate and construction portfolio. <u>See</u> <u>id</u>.

- After working for Moon Capital Singapore for nearly eight months, Respondent was forced to sign the Letter Agreement in order to get her bonus. <u>See</u> <u>id</u>. at ¶ 13.

- Respondent recently decided to leave Moon Capital Singapore and join Pramerica Real Estate Investors (Asia) Pte Ltd. ("Pramerica") in Singapore. <u>See</u> <u>id</u>. at ¶ 7. Pramerica and Moon Capital Singapore are very different businesses and are not in competition, and the opportunity to work in a different business is the main reason Respondent decided to leave Moon Capital Singapore. <u>See</u> <u>id</u>. at ¶ 7-8.

- Upon her departure from Moon Capital Singapore, Respondent took

---

[1] Respondent is merely making a special or limited appearance in this matter. As is discussed below, because Respondent is a Singapore national with little to no contacts with the State of New York, she does not believe that a New York court has personal jurisdiction over her or that this is the proper forum to decide the extraordinary relief Petitioner seeks.

no confidential or trade secret information and has no intention of soliciting any clients of Moon Capital or Moon Capital Singapore. See id. at ¶ 14.

- Respondent has extremely limited contacts with New York, and has only traveled to or communicated with New York at the insistence of John Moon, the owner of Moon Capital. See id. at ¶ 2.

Petitioner seeks to obtain injunctive relief in an arbitrable dispute in which it has virtually no likelihood of success before industry arbitrators. As explained below and in the accompanying papers, the overwhelming authority developed in scores of virtually identical disputes brought by financial services firms against former employees demonstrates that:

(a) financial services firms such as Petitioner are not irreparably harmed when employees terminate their employment to join a competitor;

(b) financial services firms such as Petitioner are not likely to succeed on the merits of their claims for injunctive relief, claims that have been repeatedly rejected by an overwhelming majority of the industry arbitration panels that have assessed such firms' contract and tort claims in essentially identical cases;

(c) financial services arbitration panels have no difficulty assessing (or denying) damages in cases where firms have sought injunctive relief and damages for acts identical to those stated in the Complaint; and

(d) the public interest overwhelmingly is not served by, and the balance of the equities does not support, entry of an injunction that bars Respondent's ability to work in the hedge fund business or asset management business.

This Court should deny Petitioner's motion in its entirety.

**ARGUMENT**

**POINT I**

**NEW YORK IS NOT THE PROPER FORUM FOR
THE EXTRAORDINARY RELIEF PETITIONER SEEKS**

Petitioner seeks to bar a citizen of Singapore from working **at all** in her chosen profession in her native country.  Respondent conducts no business here and this Court is not the proper forum for this extraordinary relief.

Respondent has insufficient contacts for a court in New York to exercise personal jurisdiction over her.  Although the Letter Agreement contains a provision purporting to agree to arbitrate disputes in New York, the provision does not confer personal jurisdiction on the Court with respect to all matters.  While the cases relied upon by Petitioner indicate that such a provision arguably could be interpreted to confer jurisdiction for New York courts for a motion to compel arbitration or to enforce the arbitration provision, it does not mean that Respondent consented to personal jurisdiction and venue in New York for all matters, particularly where Petitioner seeks to enjoin Respondent from earning a livelihood in Singapore.

In this case, a Singapore entity (under the guise of an affiliate) requests that a New York court enjoin Respondent, a Singapore national, from working in Singapore for a Singapore company in Respondent's chosen profession. This is an extraordinary request and is a fundamentally unfair one for this Court to judge due to the lack of New York contacts.  Respondent has always worked in Singapore and holds no licenses or visas that would allow her to work in the United

4

States for Petitioner.  <u>See</u> Lee Aff. at ¶ 2.  Her only physical contacts with New York arose from the insistence of John Moon.  <u>See</u> <u>id</u>.  Accordingly, enjoining a Singapore resident who has no relationship or contacts with New York from earning a livelihood in Singapore would be overreaching and unjust.

Respondent makes a special appearance in this matter and does not voluntarily submit to jurisdiction of the Court under New York's long arm statute. CPLR  § 302.  Moreover, Section 81 of the Restatement (Second) of Conflict of Laws describes the effect of a special appearance in this fashion: "A state will not exercise judicial jurisdiction over an individual who appears in the action for the sole purpose of objection that there is no jurisdiction over him."

### POINT II

### PETITIONER'S REQUEST FOR PRELIMINARY
### <u>INJUNCTIVE RELIEF PENDING ARBITRATION MUST BE DENIED</u>

Petitioner alleges that Respondent has violated or has signaled her intention to violate the restrictive covenant contained in the Letter Agreement.  The Letter Agreement contains a world-wide non-competition provision that purports to prevent Respondent for a 90-day period following termination of her employment from Moon Capital Singapore from engaging in or assisting any person or entity that engages in any hedge fund business or asset management business that follows an investment program "similar" to any of the "Moon Entities" (but no where does Petitioner set forth exactly what this "investment program" is). However, as will be demonstrated below, Petitioner cannot satisfy the stringent requirements for injunctive relief.

I.    **Petitioner's Motion for Injunctive Relief Should Be Denied Because it Cannot Satisfy the Stringent Requirements for Obtaining Such Extraordinary Relief**

A temporary restraining order is a drastic and extraordinary remedy that should not be routinely granted.  Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986); The Deal, LLC v. Korangy Pub., Inc., 309 F. Supp. 2d 512, 520 (S.D.N.Y. 2004) (Scheindlin, J.); Earthweb, Inc. v. Schlack, 71 F. Supp. 2d 299, 308 (S.D.N.Y. 1999) (Pauley, J.).  This is particularly true when the injunction at issue will deprive individuals of their livelihoods, since "[i]t is axiomatic that restrictive covenants such as that at bar provoke judicial disfavor in view of the 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood."  Michael I. Weintraub, M.D., P.C. v. Schwartz, 131 A.D.2d 663, 664 (2d Dep't 1987) (quoting Purchasing Assoc. v. Weitz, 13 N.Y.2d 267, 246 N.Y.S.2d 600 (1963)).  To obtain a temporary restraining order, the moving party must show irreparable injury and either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor.  Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004); LaForest v. Former Clean Air Holding Co., Inc., 376 F.3d 48, 54 (2d Cir. 2004); MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 192 (2d Cir. 2004).

In order to obtain a temporary restraining order, the movant must demonstrate more than the mere possibility of harm; the movant must demonstrate that it is likely to suffer imminent irreparable harm.  See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990); Earthweb, Inc., 71 F. Supp. 2d

at 308. If the irreparable harm alleged by the movant is merely "remote, speculative, or a mere possibility," a preliminary injunction is not warranted. Earthweb, Inc., 71 F. Supp. 2d at 308. See also Borey v. National Union Fire Ins. Co., 934 F.2d 30, 34 (2d Cir. 1991).

As is demonstrated below, Petitioner cannot satisfy any of the above factors and courts in New York have repeatedly refused to issue injunctions to financial services firms against former employees on facts similar to those here. See Appendix.

In this case, as a result of Respondent's departure from Moon Capital Singapore, Petitioner has not lost any business opportunities or relationships and has not been deprived of any revenue, and will not in the future. Moreover, this is not a case in which clients moved along with Respondent. There are no "clients" in this case, and the information at issue is merely the identity of general contacts at companies that Petitioner hopes to invest with at some point in time. Respondent has no business processes to share with her new employer or any competitor of Petitioner. Therefore, the temporary restraining order is unnecessary.

## A.    Petitioner Cannot Demonstrate A Likelihood Of Success On The Merits

In New York, restrictive covenants are enforced only if reasonable and "[a] restraint is reasonable only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid." BDO Seidman v. Hirschberg, 93 N.Y.2d 382,

7

388-89 (1999) (citations omitted, emphasis in original).  Moreover, it is well-settled that under New York law, non-compete clauses in employment contracts are disfavored.  See Morris v. Schroder Cap. Management Int'l, 481 F.3d 86, 88 (2d Cir. 2007).   A non-competition provision must be reasonable in both time and geographical area.   Production Resource Group, LLC v. Oberman, No. 03 Civ. 5366, 2003 WL 22350939, at *9 (S.D.N.Y. Aug. 27, 2003) (Koeltl, J.).  Absent client-based non-competition provisions, all non-compete provisions are unenforceable and unreasonable as a matter of law if they contain no geographic limitations.  See Malcolm Pirnie, Inc. v. Werthman, 280 A.D.2d 934, 935 (4th Dep't 2001); Bates Chevrolet Corp. v. Haven Chevrolet, Inc., 13 A.D.2d 27, 30 (1st Dep't 1961).

As will be demonstrated below, the injunction Petitioner seeks would not protect any legitimate interest it has, would impose severe hardships on Respondent, and is harmful to the public interest.  Specifically, an injunction barring Respondent in her chosen field would jeopardize and injure Respondent and her family and cause them significant hardship.  Under no conceivable set of facts is the public policy of this State furthered by a court interfering in a dispute between a Singapore national and her former Singapore employee (and her prospective Singapore employer).

   **1.**   **Petitioner Is Unlikely To Succeed In Proving Its Claim**
          **That the Information in Question Is a Trade Secret**

Petitioner claims that Respondent has breached her contract by violating the non-competition provision by accepting employment with Pramerica and by disclosing the alleged Confidential Information and trade secrets of Petitioner, namely information about its business relationships in the hedge fund or asset management business. This is simply false because Respondent, upon her departure from Moon Capital Singapore, left behind all of her files, and has no proprietary, confidential or trade secret information of Moon Capital or Moon Capital Singapore. See Lee Aff. at ¶ 14. Specifically, the alleged Confidential Information and/or trade secrets that Petitioner falsely and baselessly alleges Respondent misappropriated is relationships that it has developed with portfolio companies and individuals and entities within the investment community that have information about such companies. These "relationships", however, are with companies that are publicly traded and cannot be secret. See Lee Aff. at ¶ 6.

Moreover, Respondent will be performing different services than those she performed while employed by Moon Capital Singapore and will not be competing with Petitioner. At Pramerica, Lee will be focusing on the real estate securities sector, and will be limited to Asian markets and concentrating on developed markets. See id. at ¶ 8-9. In contrast, while at Moon Capital Singapore, she focused on emerging markets. Accordingly, Petitioner's argument that Respondent violated or will violate her Letter Agreement by improperly using Petitioner's proprietary or trade secret information is without any basis in fact or

law.    It  is,  of  course,  Petitioner's  burden  to  prove  as  to  each  and  every "relationship" that it calls its own that it developed that relationship on its own at its own expense.   Petitioner has not proven -- and cannot prove -- this, nor can it be  shown  that  Respondent  is  doing  the  same  work  and  performing  the  same services  such  that  this  information  would  be  relevant  and  useful  to  her  new position with Pramerica.[2]

        The  New  York  Supreme  Court,  Appellate  Division,  First  Department, has  ruled  that  the  sort  of  data  Petitioner  seeks  to  claim  as  its  own  is  in  fact  not protectable under New York law.   In Buhler v. Michael P. Maloney Consulting, Inc., 299 A.D.2d 190, 191 (1st Dep't 2002), even when the parties had entered into a written  nondisclosure  agreement,  the  First  Department  expressly  found  that  "[a] contact  list  prepared  by  [the  former  employee]  based  on  her  knowledge  of  the financial services industry and on information that was publicly available does not qualify  as  a  trade  secret  and  is  not  entitled  to  protection."    Thus,  regardless whether Petitioner's claim for misappropriation of trade secrets is based in tort or in breach of contract, unless the underlying information allegedly misappropriated is a trade secret, it is not protectable.[3]

---

[2] It is well settled in New York that customers' names can be protected as trade secrets only when "the customers are not known in the trade or are discoverable only by extraordinary efforts."    Leo Silfen, Inc. v. Cream, 29 N.Y.2d 387, 392 (1972).    Conversely,  when  "the  customers  are  readily  ascertainable  outside  the employer's business as prospective users or consumers of the employer's services or products, trade secret protection will not attach and courts will not enjoin the employee from soliciting his employer's customers."    Id.; see also Production Resource Group, LLC, 2003 WL 22350939, at *7.

[3] Numerous cases support the principle that customer information similar to that put

In Business Networks, the First Department affirmed the denial of a preliminary injunction where, similar to here, the plaintiff made unsupported allegations that defendants had 'misappropriated a database or that the database is being used to compete against it.'  Further, the Court noted that

> even assuming a misappropriation, plaintiff's allegations that the database contains publicly unavailable information are conclusory and is insufficient to establish a likelihood that it

---

at issue here by Petitioner does not constitute a protectable trade secret.  See, e.g., Production Resource Group, LLC, 2003 WL 22350939, at *13 (holding that a company's pricing structure and methods were not trade secrets because they were known within the industry and other companies used similar methods); Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 129 (E.D.N.Y. 1997) (holding customer list not a trade secret and noting customer lists were not "gained through extraordinary effort or expensive advertising"); Ivy Mar Co., Inc. v. C.R. Seasons Ltd., 907 F. Supp. 547, 557 (E.D.N.Y. 1995) (same; noting "[p]laintiffs have produced no evidence to demonstrate that they expended substantial time, effort or money to develop their list of customers or that they made efforts to guard the secrecy of information concerning their customers"); Consolidated Brands, Inc. v. Mondi, 638 F. Supp. 152, 156 (E.D.N.Y. 1986) (same; noting "[w]here customers are discoverable only through extraordinary efforts and the employer's clientele has been secured by many years expenditure of time and money then a court may confer trade status upon a customer list"); IVI Environmental, Inc., v. McGovern, 269 A.D.2d 497, 498 (2d Dep't 2000) (affirming denial of a preliminary injunction enforcing a restrictive covenant in an employment agreement, noting: "the names of the plaintiff's past, present or prospective clients are readily ascertainable from outside sources"); Business Networks of New York, Inc. v. Complete Network Solutions, Inc., 265 A.D.2d 194 (1st Dep't 1999) (same; noting that allegations that a database being used to compete "contains publicly unavailable information are conclusory and is insufficient to establish a likelihood that it constitutes a trade secret or is otherwise confidential"); Newton Garment Carriers, Inc. v. Consolidated Carriers Corp., 250 A.D.2d 482 (1st Dep't 1998) (customer list that contained information that was "in the public domain" was not a trade secret); Empire Farm Credit ACA v. Bailey, 239 A.D.2d 8551 (3d Dep't 1997); H&R Recruiters, Inc. v. Kirkpatrick, 243 A.D.2d 680 (2d Dep't 1997); Freeman v. Zhu, 209 A.D.2d 213 (1st Dep't 1994); Unifirst Corp. v. Tri-State Industrial Uniform, 204 A.D.2d 1040 (4th Dep't 1994); Howard Systems Int'l, Inc. v. IMI Systems, Inc., 192 A.D.2d 371 (1st Dep't 1993); American Printing Converters, Inc. v. Jes Label & Tape, Inc., 103 A.D.2d 787 (2d Dep't 1984) (same).

constitutes a trade secret or is otherwise confidential.  <u>Business Networks</u>, 265 A.D.2d at 194, 696 N.Y.S.2d at 435.

Despite Petitioner's baseless allegations that Respondent breached the Letter Agreement by disclosing or indicating her intention to disclose confidential information -- which Respondent denies absolutely and specifically because the alleged "confidential information" is neither relevant nor useful to Respondent's new position -- Petitioner cannot rightfully strip Respondent of her right to use basic information of the sort that became naturally familiar to them without any extraordinary effort on their part.  Here, as acknowledged by Petitioner, there are only a limited number of sector companies.  Moreover, these sector companies and the relevant contacts are generally known in the industry and are certainly not confidential or trade secret information of Petitioner.    Numerous courts in New York have rejected the argument that, where the alleged confidential information consisted of a limited number of frequent contacts, the mere recollection of customers and contact information as a result of casual memory does not rise to the level of misappropriation of trade secrets.  <u>See</u> <u>Jad Corp. of America v. Hico Corp. of America</u> 335 F. Supp. 66, 69 (S.D.N.Y. 1971) (Motley, J.); <u>Arnold K. Davis & Co. v. Ludemann</u>, 160 A.D.2d 614, 615-16 (1<u>st</u> Dep't 1990); <u>Zurich Depository Corp. v. Gilenson</u>, 121 A.D.2d 443, 445-45 (2d Dep't 1986).

Simply put, New York courts have refused to grant trade secret, confidential or proprietary status to information such as that at issue here. Financial services industry arbitration panels regularly adopt the same position. Accordingly, Petitioner cannot succeed with a claim that Respondent violated her

non-competition agreement merely by retaining the information in question.

Moreover, as noted by Respondent in her Declaration, she did not take from Moon Capital or Moon Capital Singapore any proprietary or trade secret information and has no intention of using any such information or soliciting any clients of Petitioner.  See Lee Aff. at ¶ 14.  All of her original files were left entirely in tact upon her departure from Moon Capital Singapore, and Respondent has done nothing and will do nothing to interfere with the Moon Capital entities' ability to conduct its business.  See id. at ¶¶ 12-13.

### 2.    The Restrictive Covenant is Unenforceable Under New York Law

The Court of Appeals, New York's highest court, has held that under New York law a non-competition provision is presumptively unenforceable and contrary to public policy.  Reed, Roberts Associates v. Strauman, 40 N.Y.2d 303 (1976).  In Reed, Roberts, plaintiff sued to enforce an agreement barring a former employee from "either directly or indirectly competing with, or soliciting clients of [the plaintiff]."  Id. The lower court refused to enforce the covenant not to compete, but it enjoined the defendant from soliciting plaintiff's clients.  After the decision was affirmed by the Appellate Division, both parties appealed to the Court of Appeals, which decided that both the covenant not to compete and the covenant not to solicit were unenforceable.  Id.  The Court of Appeals enunciated the rule that restrictive covenants will be enforced only when the employee's services are unique or extraordinary or when "necessary to prevent the disclosure or use of trade secrets or confidential customer information." Id.  According to the Court,

> considerations of public policy . . . militate against sanctioning the loss of a man's livelihood.  Indeed, our economy is premised on the competition engendered by the uninhibited flow of services, talents and ideas.  Therefore, <u>no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of the previous employment</u>.  This includes those techniques which are but 'skillful variations of general processes known to the particular trade.'

<u>Id</u>., 40 N.Y.2d at 307 (citations omitted; emphasis added); <u>Production Resource Group, LLC</u>, 2003 WL 22350939, at *12.

Here, Petitioner cannot make any claim that the services that Respondent rendered on behalf of the firm qualified as "unique or extraordinary" in any way.  In <u>Earthweb v. Schlack</u>, this Court denied injunctive relief sought by a former employer on the grounds that the services provided by employee did not qualify as "unique and extraordinary."  The <u>Earthweb</u> court went on to further note that such "unique" or "extraordinary" services are generally only associated with "various categories of employment where the services are dependent on an employee's special talents; such categories include musicians, professional athletes, actors and the like."  71 F. Supp. 2d at 313.  Similarly, the skills that Respondent employed during her employment with Moon Capital Singapore are not the sort that would warrant an injunction of their usage elsewhere due to their unique, specialized, or extraordinary nature.

Non-compete provisions have been subjected to increased scrutiny and are routinely struck down by New York courts.  <u>See</u>, <u>e.g.</u>, <u>Jay's Custom Stringing, Inc. v. Yu</u>, 2001 WL 761067, *7 (S.D.N.Y. 2001) (Pauley, J.) (Appendix, Tab 3) (restraint on solicitation was "impermissibly broad and unenforceable as a matter of

law"); Heartland Securities Corp. v. Gerstenblatt, 2000 WL 303274, *7 (S.D.N.Y. 2000) (Pauley, J.) (Appendix, Tab 4) (unreasonable time and area limitations as well as burden to employee made "obnoxious" restrictive covenant unenforceable); Mathias v. Jacobs, 2001 WL 1149017, *3 (S.D.N.Y. Sept. 27, 2001) (Marrero, J.) (Appendix, Tab 6) ("[p]ublic policy favors economic competition and individual liberty and seeks to shield employees from the superior bargaining position of employers"; restrictive covenant failed under required "exacting scrutiny"); SG Cowen Securities Corp. v. Messih, 2000 WL 633434 at *6 (S.D.N.Y. 2000) (Baer, J.), aff'd, 224 F.3d 79 (2d Cir. 2000) (Appendix, Tab 7) (petitioner's interest in restraining business relationships Respondent developed prior to joining Petitioner was "dubious at best"); Buhler v. Michael P. Maloney Consulting, Inc., 299 A.D.2d 190 (1st Dep't 2002) (restrictive covenant to be deemed unenforceable when no showing is made that it is "necessary to protect [plaintiff's] interest"); IVI Environmental, Inc. v. McGovern, 269 A.D.2d 497 (2d Dep't 2000); TMP Worldwide Inc. v. Franzino, 269 A.D.2d 332 (1st Dep't 2000). See also Weissman v. Transcontinental Printing USA, 205 F. Supp. 2d 415, 427 (E.D. Pa. 2002) (applying New York law to strike down a restrictive covenant that "require[d], for no legitimate purpose, the removal of a productive and skilled employee from the marketplace").

Similarly, financial services arbitration decisions in New York repeatedly have denied requests for damages predicated on alleged breaches of restrictive covenants since BDO Seidman. See, e.g., Healey v. DLA, Pierce, Fenner & Smith, Inc., 2001 WL 1004175 (N.A.S.D.) (Appendix, Tab 12) (no breach of

employment agreement or misappropriation of trade secrets); GKN Securities, Inc. v. Newbridge Securities Corp., 2001 WL 634573 (NASD) (Appendix, Tab 13) (all claims relating to breach of restrictive covenant denied); Golden Lender Financial Group, Inc. v. Majano, 2001 WL 393777 (N.A.S.D.) (Appendix, Tab 14) (claims for breach of noncompetition/nonsolicitation provision in employment agreement and misappropriation of proprietary information dismissed); Kavanagh v. Montrose Capital Management, Ltd., 2001 WL 1250357 (N.A.S.D.) (Appendix, Tab 15) (no breach of noncompetition clause in employment agreement); Labandeira v. GFI Securities, Inc., 2000 WL 1919923 (N.A.S.D.) (Appendix, Tab 16) (no breach of employment agreement, breach of fiduciary duty or misappropriation of confidential information); Campillay v. Cantor Fitzgerald & Co., Inc., 2000 WL 876519 (N.A.S.D.) (Appendix, Tab 17) (no breach of employment agreement or misappropriation of trade secrets); Hussein v. Dean Witter Reynolds, Inc., 2000 WL 572512 (N.A.S.D.) (Appendix, Tab 18) (claims for breach of employment agreement and breach of incentive compensation agreement dismissed); Greenman v. M.S. Farrell & Co., Inc., 2000 WL 726103 (N.A.S.D.) (Appendix, Tab 19) (claim for breach of employment agreement not basis for offset).[4]

_____

[4] Here, the non-competition provision Petitioner seeks to enforce is unlimited as to its geographical scope. That is, if injunctive relief is granted, Respondent would be unable to obtain employment in the United States, Asia or anywhere in the world. Incredibly, Petitioner claims that the restrictive covenant is no broader than necessary despite the lack of geographical scope because "modern technology permits none." See Pet. Brief at p. 19. However, such a statement is simply not the law and New York courts rarely find worldwide restrictions in non-competition agreements reasonable in any context. See e.g., Silipos, Inc. v. Bickel, No. 05-4356, 2006 WL 2265055, *6 (S.D.N.Y. Aug. 8, 2006) (Casey, J.) (court declined to worldwide restriction in the Non-Competition Covenant) (citing Garfinkle v.

Furthermore, as noted above, because Respondent did not provide special, unique or extraordinary services and did not develop relationships of trust with her customers, the restrictive covenant is overreaching.  See AM Medica Communications Group v. Kilgallen, 90 Fed. Appx. 10, 2003 WL 22965519 *1 (2d Cir. Dec. 17, 2003) (finding that conference organizer earning $50 million a year does not provide the "special, unique or extraordinary" services that would justify injunctive relief).

In addition, the restrictive covenant prevents Respondent from rendering services for "any venture or enterprise which engages or proposes to engage in any hedge fund business or asset management business that follows an investment program similar to any of the Moon entities."  Notably, the clause "an investment program similar to any of the Moon entities" is an extremely vague concept and is not defined in the Letter Agreement.  Moreover, as is demonstrated in the accompanying Lee Declaration, Respondent's new employer, Pramerica is a mutual fund focused only on real estate investments, while Moon Capital is a global

_____

Pfizer, Inc., 556 N.Y.S.2d 322, 323 (1st Dep't 1990) (summarily affirming the unreasonableness of a worldwide restriction)); Global Switching Inc. v. Kasper, No. 06-412, 2006 WL 1800001, *15 (E.D.N.Y. Jun. 29, 2006) (worldwide scope of restrictive covenant unreasonable and was modified where company supplied services only in Dominican Republic); Heartland Sec. Corp., 2000 WL 303274, at *7; Ivy Mar Co., 907 F. Supp. at 559-60 (geographic scope which included the United States and any foreign country in which plaintiffs or any of their subsidiaries, affiliates or principals currently markets products or has made plans to market such products" was unreasonable even though it was "identical to the scope of plaintiffs' business"); Great Lakes Carbon Corp. v. Koch Industries, Inc., 497 F. Supp. 462, 471 (S.D.N.Y. 1980) (Pollack, J.) (holding unreasonable a restriction with "no geographical limitation whatsoever").   This is patently unreasonable and unfair.

asset management hedge fund. <u>See</u> Lee Aff. at ¶ 8. Moreover, Pramerica is closely regulated and deals in direct real estate investments, while Moon Capital is unregulated and does not invest in direct real estate investments. <u>See</u> <u>id</u>. Accordingly, Respondent and Pramerica are not and will not be competing with Petitioner, and this is not a case where Respondent would be soliciting clients of Petitioner. Accordingly, the restrictive covenant is inapplicable and Petitioner is unlikely to demonstrate success on the merits.

**B.  Petitioner Cannot Demonstrate**
    **That It Will Suffer Irreparable Harm**

Even if Petitioner was able to establish an actionable breach of a valid restrictive covenant, it would still not be entitled to a preliminary injunction because it faces no prospect of irreparable harm, and the showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." <u>Reuters Ltd. v. United Press Int'l, Inc.</u>, 903 F.2d 904, 907 (2d Cir.1990) (<u>citing</u> <u>Bell & Howell v. Masel Supply Co.</u>, 719 F.2d 42, 45 (2d Cir.1983)).

For purposes of injunctive relief, irreparable harm means "any injury for which money damages are insufficient." <u>Klein, Wagner & Morris v. Lawrence A. Klein, P.C.</u>, 186 A.D.2d 631, 633 (2d Dep't 1992). "Damages compensable in money and capable of calculation, albeit with some difficulty, are not irreparable." <u>SportsChannel America Associates v. National Hockey League</u>, 186 A.D.2d 417, 418, 589 N.Y.S.2d 2, 3 (1st Dep't 1992); <u>Accord</u> <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1964), (<u>quoting</u> <u>Virginia Petroleum Jobbers Ass'n v. FPC</u>, 259 F.2d 921, 925 (D.C. 1958)) (emphasis in original) ("it seems clear that the temporary loss of

18

income, ultimately to be recovered, does not usually constitute irreparable injury . . . The key word in this consideration is <u>irreparable</u>")

The threatened injury claimed by Petitioner is amenable to mathematically precise computation. Every customer who transfers his or her account from Petitioner is documented, any deal or trade lost by Petitioner can be accounted for, and every dollar of revenue generated or brokered improperly can be traced precisely. Accordingly, in the unlikely event that the arbitration panel finds that Respondent breached any agreement or duty, the panel can readily compute the damages that would make Petitioner whole.

In similar situations, courts have repeatedly denied injunctions based on a lack of irreparable injury. <u>See</u> <u>Price Paper & Twine Co. v. Miller</u>, 182 A.D.2d 748, 750 (2d Dep't 1992) (in case to enjoin use of an allegedly-confidential customer list by a former employee, the court stated that the employer "failed to meet its additional burden of proving that it will suffer irreparable injury or that the balance of equities rests with it. Where, as here, a litigant can fully be recompensed by a monetary award, a preliminary injunction will not issue."); <u>Perez v. Computer Directions Group, Inc.</u>, 177 A.D.2d 359, 359 (1st Dep't 1991) (in action to enjoin solicitation of customers by former employee, the court stated "even if defendant were to prevail on the merits, we believe it has an adequate remedy at law so as to render injunctive relief unnecessary"); <u>Atlantis Worldwide, Ltd. v. Benitez</u>, 290 A.D.2d 379, 379-80 (1st Dep't 2002) (employer denied injunction because "irreparable harm has not been shown where money damages would fully compensate plaintiff for any lost profit attributable to defendant

19

employee's complained of conduct."). <u>See also</u> <u>Merrill Lynch, Pierce, Fenner &</u> <u>Smith, Inc. v. Bishop</u>, 839 F. Supp. 68, 73 (D. Me. 1993).

Because any possible injury to Petitioner can be fully compensated with a readily-calculable award of money damages, Petitioner faces no prospect of irreparable harm, and has no basis for obtaining an injunction from this Court.

**C.    <u>Balancing the Risks of Harm Dictates Denial of an Injunction</u>**

The profound injury faced by Respondent and her family, were an injunction to issue, compared to the minor injury that would be suffered by Petitioner – in the unlikely event any conduct was actually found to be actionable -- independently warrants denial of the order Petitioner seeks.

If this Court enjoins Respondent from working in the only field she knows, Respondent would be crippled financially and hinder her ability support herself and her family in Singapore. <u>See</u> Lee Aff. at ¶¶2, 16. Respondent is a mother of three young children and supports her family. <u>See</u> <u>id</u>. at ¶ 2. A bar of employment for Respondent is thus both overly burdensome and unconscionable. On the other hand, the most Petitioner stands to lose is an amount of money that is small relative to its size. In fact, even now, Petitioner has been unable to point to *any* actual loss, monetary or otherwise, that it would be likely to incur. Without coming forward with any indication that it has actually suffered any ascertainable loss, Petitioner nevertheless now seeks to shut down Respondent's career and jeopardize the well being of her family.

Courts in New York have, in no uncertain terms, expressed their strong disapproval towards restrictive covenants of the sort that Petitioner seeks to

apply in the instant litigation.  For instance, the Second Department pronounced that "[i]t is well-established that restrictive covenants contained in employment contracts that tend to prevent an employee from pursuing a similar vocation after termination are disfavored in the law." Skaggs-Walsh, Inc. v. John Chmiel, 224 A.D.2d, 680, 681 (2d Dep't 1996).  In Family Affair Haircutters, Inc. v. Detling, 110 A.D.2d 745, 748 (2d Dep't 1985), the court cited "the great disparity between plaintiff and defendant with regard to their financial circumstances" as one of the grounds for denying the injunction against a former employee sought by the plaintiff.  Similarly, in Data Systems Computer Centre, Inc. v. Tempesta, 171 A.D.2d 724, 726 (2d Dep't 1991), the court denied enforcement of a restrictive covenant because the plaintiffs failed to show that the equities balanced in their favor where the "defendant salesmen would be adversely affected economically by the issuance of an injunction."  This principle was applied to a financial advisor in Smith Barney Inc. v. Cappiello, No. 603445/98, slip op. at 3 (N.Y. Sup. Ct. N.Y. Co. July 20, 1998), where the court stated that "[i]n balancing the equities the Court finds the harm petitioner will sustain by denying injunctive relief until it can seek expedited relief under Rule 10335(d) is not commensurate with that which respondent will sustain by the imposition of an injunction pending resolution of the arbitration."

Notably, in Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 470 (S.D.N.Y. 2001) (Leisure, J.) which Petitioner relies on, the 90-day restrictive covenants and a 30-day notice period were held to be reasonable because the former employee would continue to receive his base salary and would not lose his

livelihood. In contrast, Respondent herein is not receiving her base salary or any compensation for the loss of her right to pursue employment in her chosen field. If an injunction is issued, Respondent would be unable to obtain employment, severely jeopardizing her and her family.

**D.    Issuance of an Injunction Against Petitioner
Would Be Significantly Injurious to the Public**

A restrictive covenant will not be enforced if it is "injurious to the public." BDO Seidman, 93 N.Y.2d at 388-89; Walter Karl, Inc. v. Wood, 137 A.D.2d 22 (2d Dep't 1988) (denying injunction and noting that "some of the clients themselves would suffer the disruption of their businesses in the event that they did not wish to return to Walter Karl, Inc., and were forced to seek package insert brokerage services elsewhere").

The issuance of an injunction here would not only harm Respondent's interests and her livelihood, but it would mean that a New York court had ordered a Singapore national from obtaining employment in Singapore for a Singapore entity in her chosen field.

**POINT III**

**SHOULD THE COURT ISSUE AN INJUNCTION,
PETITIONER MUST POST A BOND**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "The purpose of requiring

22

security prior to issuance of an injunction or a temporary restraining order is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained."  Interlink Intern. Financial Services, Inc. v. Block, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) (Haight, J.).

Notwithstanding the Letter Agreement's purported waiver of the bond requirement, Courts have held that requiring a bond is proper even in light of "without bond" language in an employment agreement.  See Uncle B's Bakery, Inc. v. O'Rourke, 920 F. Supp. 1405, 1439 (N.D. Iowa 1996) (manufacturer required to post injunction bond after its former employee was preliminarily enjoined from disclosing trade secrets to and working for competitor).

## CONCLUSION

For the foregoing reasons, this Court should deny Petitioner's motion for injunctive relief in all respects.

Dated:  New York, New York
        June 26, 2007

PADUANO & WEINTRAUB LLP

By: _____

Anthony Paduano (AP 8400)
Jordan Becker (JB 3636)
1251 Avenue of the Americas
Ninth Floor
New York, New York  10020
(212) 785-9100

Attorneys for Respondent
Gek Lang Lee

23