# EXHIBIT 4

2000 WL 303274  Page 1
(Cite as: 2000 WL 303274 (S.D.N.Y.))

C
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

HEARTLAND SECURITIES CORPORATION,
Plaintiff,
v.
Jared GERSTENBLATT, Adam Mesh, Amar Amanat, and Craig Schlifstein, Defendants.
HEARTLAND SECURITIES CORPORATION,
Plaintiff,
v.
Adrian AU, Edward Chen, Jonah Green, Charles Salvador, Neil Seth, David Wheeler, Clovis Young, Amar Amanat, Craig Schlifstein, and Landmark Securities Corporation, Defendants.

No. 99 CIV 3694 WHP, 99 CIV 3858 WHP.

March 22, 2000.

Nelson M. Stern, Esq., New York, for plaintiff.

Michael B. Carlinsky, Esq., Orrick, Herrington & Sutcliffe, LLP, New York, for defendants Gerstenblatt, Mesh, and the Au defendants.

MEMORANDUM AND ORDER

PAULEY, District J.

*1 Plaintiff Heartland Securities Corporation ("Heartland") filed the earlier of these consolidated actions on May 20, 1999 against defendants Jared Gerstenblatt ("Gerstenblatt"); Adam Mesh ("Mesh"); C.S. Block & Co., L.L.C. ("C.S. Block & Co."); C.S. Block New York, L.L.C. (C.S. Block New York"); Amar Amanat ("Amanat"); and Craig Schlifstein ("Schlifstein"). Heartland filed an amended complaint on June 30, 1999 against defendants Gerstenblatt, Mesh, Amanat, and Schlifstein alleging the following nine counts: recoupment of training costs against Gerstenblatt, breach of restrictive covenant against Mesh, civil conspiracy against all defendants, conspiracy against Amanat and Schlifstein, interference with contract against Amanat and Schlifstein, misappropriation of trade secrets against all defendants, breach of fiduciary duty against all defendants, conversion against all defendants, and unfair competition against all defendants. On July 16, 1999, defendants Gerstenblatt and Mesh asserted the following counterclaims against Heartland: breach of contract, *quantum meruit*, statutory liquidated damages, and conversion.

Heartland filed the later of these consolidated actions on May 27, 1999 against defendants Adrian Au ("Au"), Edward Chen ("Chen"), Jonah Green ("Green"), Charles Salvador ("Salvador"), Neil Seth ("Seth"), David Wheeler ("Wheeler"), Clovis Young ("Young"), C.S. Block & Co., C.S. Block New York, Amanat, Schlifstein, Tradescape Inc. ("Tradescape"), and Landmark Securities Corporation. On June 30, 1999, plaintiff filed an amended complaint against defendants Au, Chen, Green, Salvador, Seth, Wheeler, Young, Amanat, Schlifstein, and Landmark Securities Corporation alleging the following nine counts: recoupment of training costs against each of the individual defendants, civil conspiracy against all defendants, conspiracy against each of the individual defendants, interference with contract against each of the individual defendants, misappropriation of trade secrets against all defendants, willful misappropriation and disclosure of trade secrets against all defendants, breach of fiduciary duty against all defendants, conversion of property against all defendants, and unfair competition against all defendants. On July 16, 2000, defendants Au, Chen, Green, Salvador, Seth, Wheeler and Young asserted the following counterclaims: breach of contract, *quantum meruit*, statutory liquidated damages, and conversion.

On consent of the parties, this Court consolidated the actions for all purposes on January 31, 2000. Presently before this Court are defendants' motions to dismiss certain claims pursuant to Fed.R.Civ.P. 12(b)(6) [FN1]. Specifically, defendant Gerstenblatt moves to dismiss plaintiff Heartland's claim for recoupment of training costs against him. Defendant Mesh moves to dismiss Heartland's claim for breach of his restrictive covenant. Defendants Au, Chen, Green, Salvador, Seth, Wheeler and Young (collectively the "Au defendants") move to dismiss Heartland's claim for recoupment of training costs against them. For the reasons set forth below, defendants' motions are granted in their entirety.

FN1. Because defendants answered before moving to dismiss, their motions actually fall under Fed.R.Civ.P. 12(c). See *infra* Discussion Section I.

Background

I. *Gerstenblatt's Agreement*

2000 WL 303274  Page 2
(Cite as: 2000 WL 303274 (S.D.N.Y.))

*2 On July 1, 1997, Gerstenblatt, a recent college graduate, entered into an employment agreement with Datek OnLine Brokerage Services Corporation ("Datek"). (Am.Compl.¶ 20) Heartland is the successor in interest to Datek. (Am.Compl.¶ 8) The employment contract included, among other things, a provision requiring Gerstenblatt to refund to Heartland up to $200,000 in training costs if his employment terminated, for any reason other than death or disability, prior to his fourth anniversary with Heartland. That provision provided in relevant part:

> 3.4 Refund of Training Cost You recognize and agree that the training the Company will furnish you under section 2.2 at no charge to yourself, followed by the opportunity to put that training into practice using the Company's facilities and proprietary trading systems, will give you a completely new skill and an expertise that you did not possess prior to joining the Company. Further, you recognize and agree that the Company will invest considerable time and money, to the value of $200,000, in your training, which it expects to recoup through revenue you generate for the Company in the course of your employment with the Company over a period of four years beginning on the date that employment begins. For that reason you agree that, should your employment with the Company terminate prior to the fourth anniversary of the date it commenced for any reason other than death or disability as defined in 2.3.2.3(D), you will, immediately upon receiving the Company's notice demanding payment, pay the Company, as liquidated damages, the portion of the $200,000 cost of your training not amortized on the date of termination. The unamortized portion shall be computed using the following formula:
> Unamortized portion = (48-x)/48
> Where x= the number of complete calendar months between the date employment commenced and the date of termination.

(Am. Compl. ¶ 14; Kathwala Aff. Ex. 2)

The agreement provided that Heartland would lose its right to demand refund of training costs under two conditions: (1) upon the expiration of 48 months from the date Gerstenblatt's employment commenced, and (2) if, from the date of termination to the end of the 48th month, Gerstenblatt had not:

> 3.4.1 Engaged in activities, nor rendered services, directly or indirectly, that are the same as, or substantially similar to, the Services.
> 3.4.2 Sought or accepted employment in any capacity with, nor made any investment in, any person or business entity whose principal business activity is the same as or substantially similar to the business of the Company as conducted at any time during the course of your employment with the Company.
> 3.4.3 Engaged, using SOES, in the activity of trading securities on your own behalf or on behalf of any other person or business entity....

(Kathwala Aff. Ex. 2) The term "Services" was defined as "[t]rading securities listed in the NASDAQ market using the NASDAQ Small Order Execution System (SOES)." (Kathwala Aff. Ex. 2 § 1.2)

*3 The employment contract provided for compensation through "performance bonuses," on which Gerstenblatt was allowed to draw. Heartland retained 50% (or in its discretion a smaller amount) of the performance bonuses until the total amount withheld reached $200,000. The contract described the retained payments as follows:

> 2.3.2.1 No Payment. You will not be entitled to any portion of the retained amount if you voluntarily terminate your NASD registration with the Company, or the Company terminates your registration for cause ... effective before the second anniversary.
> 2.3.2.2 50% Payment. You will be entitled to 50% of the retained amount, payable on the effective date of termination, if you voluntarily terminate your NASD registration with the Company, or the Company terminates your registration for cause ... effective on or after the second anniversary, but prior to the third anniversary.
> 2.3.2.3 100% Payment. You will be entitled to 100% of the retained amount, payable--
> (A) on the date your NASD registration with the Company terminates, irrespective of the reason for termination, if termination occurs on or after the third anniversary, or
> (B) on the date on which [Heartland] ceases to employ NASD-registered personnel to trade the firm's capital or to invest [Heartland's] customer accounts on a discretionary basis, should that occur, or
> (C) on the date you execute either a Prime Customer Agreement or Managed Account Agreement with [Heartland], or
> (D) on the date you die or become permanently disabled from performing your duties under thins Agreement.

(Kathwala Aff. Ex. 2) The contract provided for New York law to apply. (Kathwala Aff. Ex. 2 § 4.4)

Gerstenblatt resigned from Heartland prior to his

2000 WL 303274  Page 3
(Cite as: 2000 WL 303274 (S.D.N.Y.))

fourth anniversary. He now works as a "day trader" for his own accounts using the facilities, equipment and proprietary software of Tradescape. Heartland has sued Gerstenblatt for $170,833 to recoup its training costs. (Am.Compl.¶ 17)

II. *Mesh's Agreement*

On August 3, 1998, Mesh, a recent college graduate, also entered into an employment agreement with Heartland. (Am.Compl.¶ 13) The employment agreement included, among other things, a non-compete agreement. The post-employment restrictive covenant provided in relevant part:
> 3.4 Competitive Activities You recognize and agree that the training the Company will furnish you under section 2.2, followed by the opportunity to put that training into practice using the Company's facilities, will give you a completely new skill and expertise that you did not possess prior to joining the Company. For that reason you agree that, during your employment with the Company and for the period of 24 months that commences on the date your employment with the Company terminates for any reason, you will not:
> 3.4.1 Engage in activities, nor render services, directly or indirectly, that are the same as, or substantially similar to the Services.
> *4 3.4.2 Seek or accept employment in any capacity with, nor make any investment in, any person or business entity whose principal business activity is the same as or substantially similar to the business of the Company as conducted at any time during the course of your employment with the Company.
> 3.4.3 Engage, using SOES, in the activity of trading securities on your own behalf or on behalf of any other person or business entity ....

(Am. Compl. ¶ 21; Kathwala Aff. Ex. 3 [FN2]) The term "Services" was defined as "[t]rading securities listed in the NASDAQ market using the NASDAQ Small Order Execution System (SOES)." (Kathwala Aff. Ex. 3 § 1.2)

> FN2. Defendant Mesh does not possess a copy of the agreement signed by him but believes it to be identical to an agreement signed by a different employee in June 1997, which is attached as Exhibit 3 to the Kathwala Affidavit. (Kathwala Aff. ¶ 4)

As part of his employment, Mesh executed an additional agreement that provided:
> The Employee also agrees that he will not work for any competitive Small Order Execution System firm (hereinafter referred to as SOES) or for himself using the SOES system for a period of at least two years after severing relations with Datek [the Employer].

(Am.Compl.¶ 22) Mesh's agreement contained the same provision regarding performance bonuses and Heartland's retention of portions of the bonuses as did Gerstenblatt's agreement. (Kathwala Aff. Ex. 3 § 2.3)

Mesh also resigned from Heartland prior to his fourth anniversary. He, like Gerstenblatt, now makes a living as a "day trader" for his own accounts using the facilities, equipment and proprietary software of Tradescape. Heartland has sued Mesh for breach of the non-compete agreement in the amount of $1,000,000. (Am.Compl.¶ 26)

III. *Au Defendants' Agreements*

Between August and November 1998, the Au defendants, all recent college graduates, signed employment contracts with Heartland. (Am.Compl.¶ 14) Their employment contracts were identical in substance. (Am. Compl. ¶ 14; Kathwala Aff. ¶ 2) Their contracts contained a "Refund of Training Cost" provision identical to that in Gerstenblatt's employment contract. (Am. Compl. ¶ 15; Kathwala Aff. Ex. 1 [FN3] § 3.4) Their contracts also contained the same performance bonus and retention agreements as the Gerstenblatt and Mesh contracts. (Kathwala Aff. Ex. 1 § 2.3)

> FN3. Because each of the agreements signed by the Au defendants were identical, those defendants attached Wheeler's agreement as Exhibit 1 to the Kathwala Affidavit. (Kathwala Aff. ¶ 2)

Like Gerstenblatt and Mesh, each of the Au defendants left Heartland prior to their fourth anniversary and now day trade with Tradescape. Heartland has sued for refund of training costs in the following amounts: $162,500 against Au; $166,666 against Chen; $162,500 against Green; $175,000 against Salvador; $170,833 against Seth; $175,000 against Wheeler; and $166,666 against Young. (Am.Compl.¶ 18)

Discussion
I. *Standard for Motion to Dismiss/Judgment on the*

2000 WL 303274                                                                                                                    Page 4
(Cite as: 2000 WL 303274 (S.D.N.Y.))

*Pleadings*

Defendants Gerstenblatt, Mesh, and the Au defendants have moved to dismiss certain claims pursuant to Fed.R.Civ.P. 12(b)(6). However, because each of the moving defendants answered before filing their notices of motion, their motions are technically motions for partial judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The standard under both rules is the same. See *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). A court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See *Burnette*, 192 F.3d at 56. A complaint may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Burnette*, 192 F.3d at 56 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The issue before the court in a motion to dismiss or judgment on the pleadings is not whether plaintiff will ultimately prevail but whether plaintiff is entitled to offer evidence in support of its claims. See *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 572 (S.D.N.Y.1999).

II. *Post-Employment Restrictive Covenants*

*5 Defendant Mesh argues that the section of his employment agreement entitled "Competitive Activities" is an unenforceable restrictive covenant. Defendant Gerstenblatt and the Au defendants contend that the "Refund of Training Cost" provision in their employment contracts is also, in intent and operation, an unenforceable post-employment restrictive covenant. Defendants argue that the respective provisions in their contracts are unenforceable because they are overly broad in scope and serve no legitimate purpose.

Heartland claims that the "Competitive Activities" provision is a valid and enforceable restrictive covenant. Heartland contends that the "Refund of Training Cost" provision is merely intended to recoup training costs, not to restrict an employee's post-employment activities. Heartland argues that even if this Court considers those provisions to be restrictive covenants, they are valid and enforceable.

A. *Standard*

New York courts use a standard of reasonableness in judging the validity of restrictive covenants. See *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388, 690 N.Y.S.2d 854, 856 (1999). "[A] restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *BDO Seidman*, 93 N.Y.2d at 389, 690 N.Y.S.2d at 857. An employer may legitimately use a restrictive covenant (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique. See *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir.1999); *BDO Seidman*, 93 N.Y.2d at 388-89, 690 N.Y.S.2d at 856-57; *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 679 (1976).

Restrictive covenants are generally disfavored by law and are only enforced under limited circumstances. See *Business Networks of New York, Inc. v. Compete Network Solutions, Inc.*, 265 A.D.2d 194, 696 N.Y.S.2d 433, 435 (1st Dep't 1999). The policy underlying this strict approach rests on notions of employee mobility and free enterprise. "[O]nce the term of an employment agreement has expired, the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition." *American Broad. Cos., Inc. v. Wolf*, 52 N.Y.2d 394, 404, 438 N.Y.S.2d 482, 487 (1981). "Important, too, are the 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood." *American Broad.*, 52 N.Y.2d at 404, 438 N.Y.S.2d at 487 (quoting *Purchasing Assocs., Inc. v. Weitz*, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 604 (1963)). On the other hand, "the employer is entitled to protection from unfair or illegal conduct that causes economic injury." *American Broadcasting*, 52 N.Y.2d at 404, 438 N.Y.S.2d at 487; see also *Reed, Roberts Assocs.*, 40 N.Y.2d at 308, 386 N.Y.S.2d at 680; *Greenwich Mills Co. v. Barrie House Coffee Co.*, 91 A.D.2d 398, 400, 459 N.Y.S.2d 454, 456 (2d Dep't 1983).

B. *Mesh's Competitive Activities Provision*

*6 Heartland does not dispute that the "Competitive Activities" provision and additional agreement signed by Mesh are post-employment covenants not to compete. (Pl.'s Mem. of Law in Opp. to Partial Mot. to Dismiss of Defs. Gerstenblatt and Mesh at 4-5) The "Competitive Activities" provision provided that Mesh could not do the following activities for two years from the termination of his employment with Datek: (1) engage in activities or render services, directly or indirectly, that are similar to those

provided by Datek, (2) seek employment in any capacity with, or make an investment in any person or business whose business is the same or substantially similar to those provided by Datek, and (3) engage in trading securities on behalf of another person, business or himself using the same system as Datek, the NASDAQ Small Order Execution System (SOES). (Am. Compl. ¶ 21; Kathwala Aff. Ex. 3 § 3.4) Mesh also executed an additional agreement which provided that he would not work for any competitive SOES firm or for himself using the SOES system for at least two years following the end of his employment with Datek. (Am.Compl.¶ 22)

C. *Gerstenblatt's and Au Defendants' Repayment of Training Costs Provisions*

This Court must determine whether defendant Gerstenblatt's and the Au defendants' repayment of training costs provisions are, in purpose and effect, post-employment restrictive covenants. The Au defendants' contracts provide that Heartland will lose its right to demand refund of training costs if, from the date of termination until the date of the fourth anniversary of the commencement of that individual's employment, he has not: (1) engaged in activities or rendered services, directly or indirectly, that are the same as or substantially similar to those provided by Heartland, (2) sought or accepted employment in any capacity with, or made an investment in any person or business whose business is the same or substantially similar to those of Heartland, or (3) engaged in trading securities on behalf of another person, business or himself using the same system as Heartland, the NASDAQ Small Order Execution System (SOES). (Kathwala Aff. Exs. 1 and 2 § 3.4) Defendant Gerstenblatt and the Au defendants argue that in purpose and intent, the repayment of training costs provisions are post-employment restrictive covenants. Heartland contends that the provisions are not restrictive covenants, but merely "conditional promise[s] to pay money for a service under specified conditions." (Pl's Mem. of Law in Opp. to the Partial Mot. to Dismiss of Au Defendants at 7) Heartland stated at oral argument that "there is nothing in th[ese] provision[s] that say[ ] somebody cannot go to work for somebody else." (Oral Arg ., Jan. 21, 2000 at 15)

This Court disagrees with plaintiff's characterization of the agreements. The refund of training costs provisions are designed to chill people from changing jobs, and thus, function as restrictive covenants. These provisions provide that from the moment a new employee starts working for Heartland, it is presumed that the company has spent $200,000 in training costs on that individual. The longer an individual stays, the less the company values its training costs. For example, if an individual worked for Heartland for only one day, he would have received minimal training and yet owe Heartland, according to this Court's calculations, approximately $199,860. Conversely, if an individual worked one day short of four years, he would owe only approximately $140. At oral argument, Heartland tried to explain its refund of training costs provision by stating that the major costs to Heartland for training its employees are incurred at the outset. However, upon further questioning, Heartland was unable to offer a single example of such a major cost.

*7 The fact that Heartland will forgive the entire repayment of training costs if the employee does not compete with the company in any way for a four year period from the start of his employment further supports this Court's finding that the true purpose and intent of the provision is to discourage an employee from leaving the company. If the refund of training costs provision was intended merely to recoup training costs, those costs to the company should be the same no matter what the employee does after leaving Heartland. There simply is no rationale to explain the forgiveness of repayment section except as an obnoxious way to discourage employees from leaving the company.

Finally, although Heartland may be correct that the repayment of training costs provision technically does not forbid someone from going to work for someone else, it is clear to this Court that the true purpose of the provision is to dissuade someone from even considering such a move. Requiring repayment of up to $200,000, particularly of a recent college graduate in his first post- college job, approaches indentured servitude.

Therefore, this Court finds that Heartland's "Repayment of Training Cost" provision is a restrictive covenant that is not per se unlawful but "will be carefully scrutinized by the courts." *BDO Seidman,* 93 N.Y.2d at 388, 690 N.Y.S.2d at 856. Because defendant Gerstenblatt's and the Au defendant's "Refund of Training Cost" forgiveness provision is identical to Mesh's "Competitive Activities" provision, this Court will analyze their validity together.

D. *Time and Area Limits*

Courts may only enforce restrictive covenants that are reasonable in time and geographic limitations. *See BDO Seidman,* 93 N.Y.2d at 389, 690 N.Y.S.2d

at 857. None of the defendants' agreements provide for any geographic limitations; the non-compete agreements theoretically cover the entire world. Other courts have held restrictive covenants with similar lack of geographic limitations to be unreasonable. See, e.g., *Great Lakes Carbon Corp. v. Koch Industries, Inc.*, 497 F.Supp. 462, 471 (S.D.N.Y.1980) (holding unreasonable a restriction with "no geographical limitation whatsoever"); *Garfinkle v. Pfizer, Inc.*, 162 A.D.2d 197, 197, 556 N.Y.S.2d 322, 323 (1st Dep't 1990) (refusing to enforce a restrictive covenant whose geographic scope "encompasses the entire world").

The duration of the restrictive covenant, especially when read with the limitless geographic scope of the covenant, is unreasonable. Mesh's agreement provides that he cannot compete for two years from the time he leaves the company. Defendant Gerstenblatt's and the Au defendants' agreements provide that they cannot compete for four years from their start date with Heartland. Other courts have held similar restrictive covenants unenforceable. See, e.g., *Great Lakes Carbon Corp.*, 497 F.Supp. at 471 (holding a three year restriction with no geographic limitations to be unreasonable); *Columbia Ribbon & Carbon Mfg. Co v. A-1-A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006-07 (1977) (covenant in which employee promised not to compete with employer for two year period after termination within any territory to which he was assigned within the last two years of his employment held unenforceable); *Maxon v. Franklin Traffic Service, Inc.*, 261 A.D.2d 830, 832, 689 N.Y.S.2d 559, 561 (4th Dep't 1999) (holding restrictive covenant that limited plaintiff from engaging in a similar business for five years within a 300 miles of any office operated by defendant as "unreasonable as to time, scope and area and are unduly burdensome").

*8 This Court finds that the duration and geographic scope of Mesh's "Competitive Activities" provision and of Gerstenblatt's and the Au defendant's "Repayment of Training Cost" provision are patently unreasonable and unenforceable.

E. *Employer's Legitimate Interests*

In addition to the lack of reasonable time and area restrictions, the lack of legitimate employer interest supporting the "Competitive Activities" and the "Repayment of Training Cost" provisions make them unenforceable. A court may only enforce a restrictive covenant to the extent necessary to protect an employer's legitimate interest, such as preventing an employee from soliciting or disclosing trade secrets, preventing an employee from releasing confidential information regarding an employer's customers, or protecting an employee's services to the employer that are special or unique. See *Ticor Title Ins. Co.*, 173 F.3d at 70. Heartland contends that the restrictive covenants are justified on two main grounds: (1) because of the special nature of the skills gained by the employee and of the employee's services and (2) because of Heartland's need to protect its trade secrets. (Pl.'s Mem. of Law in Opp. to the Partial Mot. to Dismiss of Defs. Gerstenblatt and Mesh at 6-11).

Courts have generally held that an employee's services are unique enough to support a post-employment non-compete agreement only in jobs where the employer's services are dependent on an employee's special talents, such as with musicians, professional athletes and actors. See *Ticor Title Ins. Co.*, 173 F.3d at 70. In order to justify a restrictive covenant, an employer must show more than simply that the employee excels at his work or that his services are of high value to his employer; an employer must show that an employee's services "are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury." *American Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 390 n. 9 (2d Cir.1982) (quoting *Purchasing Assocs.*, 13 N.Y.2d at 274, 246 N.Y.S.2d at 605).

In its opposition papers, Heartland alleges that defendants are unique employees based upon the knowledge they gained while at Heartland and because of the special nature of their services. (Pl.'s Mem. of Law in Opp. to the Partial Mot. to Dismiss of Defs. Gerstenblatt and Mesh at 9) However, knowledge of how to use Heartland's SOES trading system does not elevate an employee to the level of uniqueness required by law. Heartland has failed to allege facts to support its contention that the employees are irreplaceable or that the loss of their services would cause irreparable injury to Heartland. Accordingly, the unique nature of defendants' services cannot support the restrictive covenant.

Heartland also contends that the provisions at issue are justified by Heartland's need to protect its trade secrets. (Pl.'s Mem. of Law in Opp. to the Partial Mot. to Dismiss of Defs. Gerstenblatt and Mesh at 6-11) Protection of trade secrets is certainly a legitimate employer interest, see *Ticor Title Ins. Co.*, 173 F.3d at 70, and Heartland alleges in its complaint that it possesses trade secrets and proprietary information. (Am.Compl.§ 9) However, the language of the competitive activities provision and

2000 WL 303274  
(Cite as: 2000 WL 303274 (S.D.N.Y.))

Page 7

the forgiveness of repayment of training costs provision belies Heartland's proffered rationale. The provisions make no reference to trade secrets or to protection thereof. Gerstenblatt's and the Au defendants' provisions are part-and-parcel of the repayment of training costs provision, and Mesh's agreement explicitly justifies the provision based on the fact that Heartland's training "will give you a completely new skill and expertise that you did not possess prior to joining the company." (Kathwala Aff. Ex. 3 § 3.4) Thus, this Court finds that trade secrets cannot justify the provisions at issue. Accordingly, the lack of legitimate interests by Heartland to support Mesh's "Competitive Activities" provision and Gerstenblatt's and the Au defendants' "Refund of Training Cost" provision is an additional reason why this Court refuses to enforce those provisions.

F. *Burden to Employees*

*9 A final reason why this Court declines to enforce Gerstenblatt's and the Au defendants "Repayment of Training Cost" provisions and Mesh's "Competitive Activities" provision is that they are extremely burdensome to the employees. A restrictive covenant may not be enforced if it is unreasonably burdensome to the employee. *See BDO Seidman, 93 N.Y.2d at 389, 690 N.Y.S.2d at 857.* This Court finds that the breadth of jobs from which the employee is forbidden (in Mesh's case) or discouraged by a threat of a huge repayment of training costs (in Gerstenblatt's and the Au defendants' cases) is extraordinary. The employees cannot engage in activities, directly or indirectly, that are substantially similar to those provided by Heartland; nor can the employees work in any capacity or invest in any person or business providing services substantially similar to those of Heartland; nor can the employees trade securities, even on their own behalf, using SOES. Thus, the employee would violate the provision, for example, if he were a janitor for another securities company or if he bought a single share of stock through an on-line brokerage firm. When questioned by the Court what the agreement allows a former employee to do, Heartland responded that "[t]hey could work outside of the brokerage business. They could take a position performing a job that does not involve the trading of securities." (Oral Arg. Jan. 21, 2000 at 20). In fact, the only job in the securities industry that Heartland alleged would not run afoul of the covenant is one working with the New York Stock Exchange. (Oral Arg. Jan. 21, 2000 at 20)

This Court finds that enforcement of these provisions would be unduly burdensome on the employee. This action involves recent college graduates who have chosen a profession. To hold that such individuals may essentially be barred from their chosen profession for a period of up to four years in some cases would be entirely unreasonable and against public policy.

This Court finds Mesh's "Competitive Activities" provision and Gerstenblatt's and the Au defendants' "Repayment of Training Cost" provision unenforceable because of the unreasonableness of the time and geographic limitations in the provisions, the lack of legitimate employer interests supporting the provisions, and the undue burden enforcement of the provisions would cause the employees. Accordingly, Heartland's claim for recoupment of training costs is dismissed against defendant Gerstenblatt and the Au defendants, and Heartland's claim for breach of post-employment restrictive covenant is dismissed against defendant Mesh.

G. *Partial Enforcement*

Heartland asserts that if this Court finds that any of the contract is unenforceable, the unenforceable provisions should be severed and the rest of the contract should be enforced. Heartland relies upon the language in the contract:

> If, at the time of enforcement of any provision of section 3.4 [the "Refund of Training Cost" provision for Gerstenblatt's and the Au defendants' contracts and the "Competitive Activities" provision for Mesh's contract], a court shall hold that the period or scope of the restrictions stated in that section are unreasonable under the circumstances then existing, you and the Company agree that the maximum allowable period or scope of the restrictions stated in section 3.4 that is reasonable under such circumstances shall be substituted for the period, scope or area stated in that section, with respect to the enforcement of the particular provision then at issue.

*10 (Kathwala Aff. Exs. 1, 2, and 3 § 4.3) Conversely, the moving defendants argue that the Court should not "blue pencil" the contract in this case.

A court has judicial power to sever and grant partial enforcement for an overbroad employee restrictive covenant. *See BDO Seidman, 93 N.Y.2d 382, 394, 690 N.Y.S.2d 854, 860 (1999).* Partial enforcement may be justified if the employer is able to demonstrate an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive conduct and can show the purpose of the

2000 WL 303274                                                                                                    Page 8
(Cite as: 2000 WL 303274 (S.D.N.Y.))

restrictive covenant was to protect a legitimate business interest. *See BDO Seidman, 93 N.Y.2d at 394, 690 N.Y.S.2d at 860-61.* This Court declines to exercise its discretion to "blue pencil" the provisions at issue in an effort to make them enforceable. *See Earthweb, Inc. v. Schlack, 71 F.Supp.2d 299, 313 (S.D.N.Y.1999)* (declining to blue pencil because "the employment agreement as a whole overreache[d]"), *remanded __ F.3d __, 2000 WL 232057 (2d Cir. Jan. 31, 2000)* As discussed above, Heartland has failed to show that the purpose of the restrictive covenant was to protect a legitimate business interest. Additionally, Heartland has failed to demonstrate that it did not overreach or use dominant bargaining power in reaching the agreements with defendants.

Because this Court has already determined that the provision is, in purpose and effect, an unenforceable post-employment restrictive covenant, the Court need not reach the parties' remaining arguments.

Conclusion

For the reasons set forth above, defendants Gerstenblatt, Mesh, and the Au defendants' motions to dismiss certain claims are granted in their entirety. Specifically, Heartland's claim for recoupment of training costs is dismissed against defendant Gerstenblatt and the Au defendants, and Heartland's claim for breach of restrictive covenant is dismissed against defendant Mesh. The parties are directed to appear for a pretrial conference on May 12, 2000 at 12:00 p.m. in Courtroom 618.

SO ORDERED:

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works