# EXHIBIT 7

Not Reported in F.Supp.2d
(Cite as: 2000 WL 633434 (S.D.N.Y.))

▷
Only the Westlaw citation is currently available.


United States District Court, S.D. New York.

SG COWEN SECURITIES CORPORATION
Petitioner,
v.
Robert W. MESSIH Respondent.

No. 00CIV.3228(HB).

May 17, 2000.


OPINION & ORDER

BAER, District J.

*1 Petitioner, S.G. Cowen Securities Corporation, petitions this Court for a preliminary injunction in aid of arbitration. For the reasons set forth below, petitioner's motion is denied.

I. BACKGROUND

Petitioner S.G. Cowen Securities Corporation ("Cowen") is a New York corporation with its principal place of business in New York City. Cowen provides investment banking services to clients in the technology industry through offices located in New York, Boston, San Francisco, and Chicago. Cowen hired respondent, Robert Messih, a California resident, to serve as the Managing Director of Technology in the Corporate Finance division of plaintiff's San Francisco office. Messih signed an 18 month employment agreement ("Agreement") that provided remuneration approaching $5 million, including bonuses. The Agreement contained a non-compete provision and a clause that called for any disputes to be resolved by a New York Stock Exchange arbitration panel in San Francisco. The Agreement calls for the application of New York law. Messih worked as an investment banker with Cowen until April 11, 2000, at which time he resigned to work as an investment banker with Banc of America Securities LLC. Thereafter, on April 14, 2000 Cowen initiated a special proceeding in the Supreme Court of the State of New York pursuant to N.Y. C.P.L.R. § 7502(c) seeking temporary injunctive relief in advance of arbitration. Cowen contemporaneously provided Banc of America and Messih notice of its intention to arbitrate. Justice Omansky issued an ex parte temporary restraining order against Messih

enjoining him from working for Banc of America or any Cowen competitor anywhere in the world. Justice Omansky issued an Order to Show Cause, returnable April 28, 2000, why a preliminary injunction should not issue pending arbitration. On April 27, 2000, Messih removed the New York state action to this Court. Subsequently, on May 1, 2000, Messih filed a motion to dissolve, in part, the temporary restraining order. This Court heard oral argument on the same day and received Cowen's opposition papers on May 3, 2000.

II. DISCUSSION

A. Standards

On this motion to dissolve a temporary restraining order, Cowen, the party that obtained the order, bears the burden of justifying continued injunctive relief. See Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 441-43 (1974). New York C.P.L.R. § 7502(c) permits injunctive relief in aid of arbitration "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual" in the absence of injunctive relief. New York City Off-Track Betting Corp. v. New York Racing Ass'n, 673 N.Y.S.2d 387, 390 (1st Dep't 1998) (quoting N.Y. C.P.L.R. § 7502(c)). Petitioner argues that absent injunctive relief, Messih will work for its direct competitor, Banc of America, and thereby cause substantial and irreparable damage to petitioner, its business opportunities and its relationships with clients. Messih, in a declaration submitted in support of the instant motion, has represented to the Court that he has not and will not disclose any confidential information obtained while at Cowen or, solicit any clients he obtained while at Cowen unless permitted to do so by the arbitration award. (Messih Decl. at ¶¶ 11-13).

*2 On the record before this Court, it is far from clear whether the arbitration award sought by Cowen--an injunction barring Messih from working for any competitor until December 31, 2001 (the last day covered by the 18 month contract)--would be rendered ineffectual if an injunction is not granted. If later this year, an arbitration panel were to decide that Messih has violated his employment contract, Cowen will suffer a competitive disadvantage. However, this Court finds, for the reasons spelled out below, that the probability of success on the merits at arbitration is slim, and equitable considerations mandate that petitioner's request for relief be denied. [FN1]


FN1. In the event that this dispute is eventually submitted to arbitration, the

arbitration panel should not consider this Court's decision determinative of whether the non-compete provisions of the employment agreement are enforceable. This Court's denial of preliminary relief is not binding on any arbitrator panel. This Court undertakes a review of the merits in this case solely for the purpose of determining the appropriateness of injunctive relief, and nothing in this decision should be construed as mandating any particular finding at arbitration.

Cowen argues to this Court that, in deciding whether a preliminary injunction should issue, I need focus only on whether an arbitral award in its favor might be rendered ineffectual in the absence of a provisional remedy. Indeed, in determining the propriety of relief under 7502(c), several New York appellate courts have held that "the only consideration in deciding whether to grant a preliminary injunction is whether the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." *In re Guarini,* 650 N.Y.S.2d 4, 4-5 (1st Dep't 1996) (citations omitted). In *National Telecommunications Ass'n v. National Communications Ass'n,* the First Department held that "[i]n arguing that petitioner has failed to demonstrate irreparable harm and a probability of success on the merits, respondent would have this Court adopt an inappropriate standard for deciding whether relief should be granted under C.P.L.R. § 7502(c)." 592 N.Y.S.2d 591, 591 (1st Dep't 1993); *see also Suffolk County Patrolmen's Benevolent Ass'n v. County of Suffolk,* 540 N.Y.S.2d 882 (2nd Dep't 1989).

However, in a recent decision addressing whether injunctive relief in advance of arbitration pursuant to § 7502(c) was warranted, the First Department held that we must "apply the general criteria governing the issuance of injunctive relief to an application for a preliminary injunction under C.P.L.R. § 7502(c)." *In re Cullman Ventures, Inc.,* 682 N.Y.S.2d 391, 396 (1st Dep't 1998), citing *New York City Off-Track Betting Corp. v. New York Racing Ass'n,* 673 N.Y.S.2d 387 (1st Dep't 1998), and *Koob v. IDS Fin. Servs., Inc.,* 629 N.Y.S.2d 426 (1st Dep't 1995); *see also,* Vincent C. Alexander, *Practice Commentaries,* McKinney's Cons.Laws of N.Y., Book 7B, C.P.L.R. C7502:6, at 433 (1998). This Court finds the First Department's more recent view to be the better one. In this case, consideration of the underlying merits, i.e. Cowen's likelihood of success on the merits, and the prospect of irreparable harm absent injunctive

relief is especially appropriate.

Under New York law, injunctive relief is justified where petitioners show (1) a likelihood of success on the merits, (2) danger of irreparable injury if provisional relief is withheld; and (3) a balance of the equities tipping in their favor. See N.Y. C.P.L .R. § 6301; *Aetna Ins. Co. v. Capasso,* 75 N.Y.S.2d 860, 862 (1990). Before a preliminary injunction is granted, "the party seeking the relief must demonstrate a strong probability of ultimate success and thus a clear right to the relief sought, particularly in a proceeding to enforce a restrictive covenant against a former employee." *Jarvis Associates, Inc. v. Stotler,* 627 N.Y.S.2d 810, 812 (3rd Dep't 1995) (citing *Cool Insuring Agency v. Rogers,* 509 N.Y.S.2d 180, appeal dismissed 69 N.Y.S.2d 1037).

*B. Choice of Law*

*3 In order to assess whether petitioner can demonstrate a likelihood of success on the merits of this dispute, this Court must first determine which state's law governs this dispute. A court sitting in a diversity case must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487 (1941). The Employment Agreement provides that the "interpretation and application of the terms herein shall be governed by the laws of the State of New York without regard to principles of conflict of laws." (Petitioner's Declaration, Ex. 2 at 8). Courts within the Second Circuit have noted that "New York courts will normally honor the parties' choice of forum provided the forum selected has a substantial relationship to the parties or the transaction and the application of the forum's law would not be contrary to a fundamental policy of a state with a materially greater interest than the forum state." *Triad Fin. Establishment v. Tumpane Co.,* 611 F.Supp. 157, 162 (N.D.N.Y.1985), citing Restatement (Second) Conflict of Laws, § 187; *see also Business Incentives Co. v. Sony Corporation of America,* 397 F.Supp. 63, 67 (S.D.N.Y.1975). Therefore, New York courts will enforce a choice of law provision unless it was "procured by fraud or where the issue is of such overriding concern to the public policy of the other jurisdiction as to override the intent of the parties and the interest of this state in enforcing its own policies ." *Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,* 643 N.Y.S.2d 528, 531 (1st Dep't 1996) (citing Restatement (Second) of Conflict of Laws § 187[2][b]); and 19 N.Y.Jur.2d, Conflict of Laws § 33, at 611. Undoubtedly the "failure to enforce the parties' choice of law does invalidate their contract to some extent," however " '[f]ulfillment of the parties'

Not Reported in F.Supp.2d
(Cite as: 2000 WL 633434 (S.D.N.Y.))

expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties." ' _Southern International Sales Co. v. Potter & Brumfield Division of AMF Inc., 410 F.Supp. 1339, 1341-42 (S.D.N.Y.1976)_ (citing _Restatement (Second) Conflict of Laws § 187_, comment g).

When determining which state's law should apply, New York courts "weigh the relative interests of the states involved to determine which state has the greatest interest at stake" in the absence of a contrary statutory directive. [FN2] _Triad Fin. Establishment v. Tumpane Co., 611 F.Supp. 157, 162 (N.D.N.Y.1985)._ Additionally, "[t]he court must also consider which forum has the most significant relationship with the parties and transaction." _Id., see also Zurich Insurance Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 642 N.E.2d 1065, 1068, 618 N.Y.S.2d 609, 612 (1994)._ The New York Court of Appeals has stated that a "center of gravity" or "grouping of contacts" is the "appropriate analytical approach to choice of law questions in contract cases." _Id._ Pursuant to this approach, courts consider the place of contracting; the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.

> FN2. N.Y. Gen. Oblig. Law § 5-1401 provides that "[t]he parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars ... may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." However, § 5-1401 provides an exemption for contracts, agreements or undertakings involving "labor or personal services."

_C. Applicability of California Law_

*4 In this case, California contacts predominate. Messih lives in California and was hired by Cowen to work in its San Francisco, California office. Previous

to his employment by Cowen, Messih worked for many years for another bank in California. Messih executed the Employment Agreement in California. (_See_ Messih Decl. at ¶ 6). While California and New York were the situs of contract negotiations, (_see_ Messih Decl. at ¶ 6, Fennebresque Decl. ¶ 4) and Cowen's corporate headquarters are located in New York, California has a materially greater interest in this contract dispute than New York.

Having concluded that California law governs this contract, we examine the pertinent section of the California Business and Professions Code. There we read that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." California Business and Professions Code § 16600. California courts broadly construe the language of section 16600 and "generally do not enforce covenants not to compete." _Bayer Corp. v. Roche Molecular Systems, 72 F.Supp.2d 1111, 1119 (N.D.Cal.1999)._

California courts have routinely observed that "Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when employment has terminated, unless necessary to protect the employer's trade secrets." _Metro Traffic Control, Inc. v. Shadow Traffic Network, 27 Cal.Rptr.2d 573, 577, 22 Cal.App. 4th 853, 859 (Cal.Ct.App.1994)._ Indeed, limiting anti-competitive agreements qualifies as a "fundamental public policy" of California. _International Business Machs. Corp. v. Bajorek, 191 F.3d 1033, 1038 (9th Cir.1999)._ Under California law, that "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers" provided that the employee has not committed any illegal act in changing his employment. _Metro Traffic Control, 27 Cal.Rptr.2d at 577, 22 Cal.App. 4th at 860_ (citations omitted). Thus, if the arbitration panel were to apply California law to this dispute, it would not enforce the Agreement's non-competition provisions against Messih.

_D. New York Law_

Assuming arguendo that the arbitration panel might apply New York law to this dispute, they would likely also conclude that Cowen is not entitled to an injunction barring Messih from working for a competitor until January 1, 2001. Under New York law, a covenant by an employee not to compete must, in the first instance, be reasonable in time and

geographic scope. *See Reed, Roberts Assocs. v. Strauman,* 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976). Messih argues that an injunction would significantly impair his ability to maintain his standing with his clients in a fast-moving industry, and would seriously impair his cash flow. However, Cowen has agreed to pay Messih his base salary of approximately $20,000 per month and provide benefits until the end of the year. The Agreement at issue effectively provides that Messih may not compete with his employer for the next approximately seven and a half months, until the period covered by the Agreement expires. Thus, the Agreement's restriction as to time is not unreasonable. *Chernoff Diamond & Co. v. Fitzmaurice, Inc.,* 651 N.Y.S.2d 504, 505 (1st Dep't 1996) (enforcing two year restriction). With regard to geographic scope, the Agreement lacks any geographic restriction, and if enforced, the non-competition provisions would bar Messih from working for a competitor of Cowen in San Francisco or anywhere in the world. Cowen claims that such a restriction is appropriate in light of the fact that Messih's employment was "materially connected to cities throughout the United States and outside this country." (Pet. Mem. at 18.) Under New York law, non-compete agreements that lack geographic restriction are disfavored and are routinely held unreasonable. *See, e.g., Great Lakes Carbon Corp. v. Koch Industries, Inc.,* 497 F.Supp. 462, 471 (S.D.N.Y.1980) (holding unreasonable a restriction with "no geographical limitation whatsoever"); *Garfinkle v. Pfizer, Inc.,* 556 N.Y.S.2d 322, 323 (1st Dep't 1990) (refusing to enforce a restrictive covenant whose geographic scope "encompasses the entire world"). While a close question in my view, I am persuaded that the lack of geographic restrictions in the non-competition provisions of the Agreement render is unreasonable in this case, and hence, unenforceable.

*5 If an arbitration panel concluded that the provisions of the Agreement with respect to duration and geographic scope are reasonable, under New York law, the panel could only grant enforcement of the Agreement "to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 70 (2d Cir.1999) citing, *Purchasing Assocs. v. Weitz,* 13 N.Y.2d 267, 272-73, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963). Cowen has not made the requisite showing on any of these grounds.

As Messih points out, Cowen has made no "effort to identify any of the purported trade secrets or confidential customer information, or to explain how or why Messih would make use of them." (Resp. Brief at 13.) Courts applying New York law with respect to non-compete provisions will not presuppose that employees possess trade secrets or confidential information. See, e.g., *H. Meer Dental Supply Co. v. Commisso,* 702 N.Y.S.2d 463 (3rd Dep't 2000) ("[i]n order to establish ... confidential customer information status, it [is] incumbent upon plaintiff to demonstrate that its customers are not known in the trade and are discoverable only by extraordinary efforts") (citations omitted). However, Messih has not asked this Court to vacate the portion of the temporary restraining order that enjoins him from disclosing Cowen's trade secrets and confidential information. Thus the Court will enter an injunction barring Messih from disclosing Cowen's trade secrets, confidential information, and enjoining Messih from soliciting any clients obtained while employed by Cowen.

This Court finds that an arbitration panel is unlikely to conclude that Messih was a "unique" employee, and thus, if applying New York law, the panel could grant Cowen relief only to the extent necessary to prevent disclosure of its confidential information. *Purchasing Associates, Inc.* 13 N.Y.2d 267, 274, 246 N.Y.S.2d 600.606 (1963). The Second Circuit has observed that "in determining uniqueness the inquiry now focuses more on the employee's relationship to the employer's business than on the individual person of the employee." *Ticor Title Ins. Co.,* 173 F .3d at 71. Thus, this Court must assess the nature of Messih's relationship to Cowen's investment banking services to companies in respondent's area of expertise, i.e., the "computer storage technology" and semiconductor device sectors. Cowen has not contested the portion of Messih's claim that he had developed sixteen revenue-generating clients in the storage technology sector and six revenue-generating clients in the semiconductor device industry. (Messih Decl. at ¶ 5). Messih claims that he actually had to give these clients up due to insufficient support at Cowen, that Cowen made it "virtually impossible" for him to provide the requisite services to his clients, and that as a consequence, he turned to new opportunities in electronics manufacturing services and semiconductor component [FN3] sectors. (Messih Decl. at ¶ ¶ 7,8). Messih claims that he was able to generate revenue in these new fields, but left Cowen after nine months of employment due to dissatisfaction with his opportunities there. (Messih Decl. at ¶ ¶ 8,9). This Court cannot find that Messih

Not Reported in F.Supp.2d
(Cite as: 2000 WL 633434 (S.D.N.Y.))

qualified as a "unique" or "special" banker. Cowen admits that any successor to Messih "would take at least six to nine months ... to get acclimated to his or her new position, adjust to a new corporate environment, and become a productive member of SG Cowen's corporate finance group." (Walsh Decl. at ¶ 9). Indeed, Messih admits that he struggled to produce revenue for Cowen in his first nine months there. Messih had not provided extraordinary output for Cowen by the time he left, but instead was only beginning to re-establish himself after turning to new sectors of banking. Though it is undisputed that Messih maintains special client relationships, Messih claims that he was unable to exploit fully the potential of the pre-existing relationships which he brought to Cowen during his brief tenure there. Cowen has demonstrated only that Messih possessed superior knowledge and client contacts in the investment banking technology industry. As the Second Circuit has stated, "[m]ore must, of course, be shown to establish such a [special, unique or extraordinary] quality than that the employee excels at his work or that his performance is of high value to his employer." *American Institute of Chemical Eng'rs v. Reber-Friel Co.,* 682 F.2d, 390 n. 9 (2d Cir.1982) (quoting *Purchasing Assocs., Inc., v. Weitz,* 13 N.Y.2d 267, 274, 246 N.Y.S.2d 600, 606 (1963)). Cowen has failed to demonstrate that the employee's services were unique or extraordinary to an extent that would "make his replacement impossible or that the loss of such services would cause the employer irreparable injury." *Purchasing Associates, Inc.* 13 N.Y.2d 267, 274, 246 N.Y.S.2d 600, 606 (1963). Cowen alleges that a search for Messih's replacement may take "considerable time" (Walsh Decl. at ¶ 9) but it has not shown that it is impossible to replace him.

FN3. Messih claims that semiconductor equipment makers provide the component equipment used to produce semiconductor devices.

*6 Turning to the question of whether injunctive relief is warranted in order to prevent irreparable injury to the petitioner, this Court finds that Cowen has failed to demonstrate any cognizable injury that will arise in the absence of an injunction. True, if Messih works for a competitor in the period prior to January 1, 2001, the competitor will secure a competitive advantage vis a vis Cowen. However, the cases cited by Cowen do not dictate the result it seeks. Petitioner relies on *BDO Seidman v. Hirshberg,* for the proposition that an "employer has

a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which ha[ve] been created and maintained at the employer's expense, to the employer's competitive detriment." 93 N.Y.2d 382, 392, 712 N.E.2d 1220, 1224, 690 N.Y.S.2d 854, 859 (1999). However, the Court in *BDO Seidman* also recognized that the employers have no legitimate interests in preventing employees from competing for the patronage of clients they have acquired independently. *Id.* Likewise *Maltby v. Harlow Meyer Savage, Inc.,* is inapposite. 166 Misc.2d 481, 633 N.Y .S.2d 926 (N.Y.Sup.1995), aff'd, 637 N.Y.S.2d 110 (1st Dep't), leave to appeal dismissed, 88 N.Y.2d 874, 645 N.Y.S.2d 448, 668 N.E.2d 419 (1996). In that case, as in *Ticor,* all of the employee's clients came to him during his term of employment with the employer seeking to restrain him, and those clients were developed, in part, at the employer's expense. In the instant case, Messih has represented to this Court that he will not solicit clients which he obtained while in Cowen's employ. Instead, Messih intends to pursue business opportunities with the clients that he had developed prior to joining Cowen. Petitioner's interest in restraining these pre-existing relationships is dubious at best. Given that Cowen has failed to substantiate any irreparable harm in the absence of an injunction, the balance of the equities cannot tip in favor of petitioners.

### III. CONCLUSION

CG
For the reasons set forth above, this Court concludes that because preliminary injunctive relief may be granted only to the extent necessary to protect petitioner's legitimate business interests, respondent's motion to dissolve, in part, the temporary restraining order is GRANTED. Accordingly, injunctive relief is granted only to the extent that Robert Messih is hereby preliminary enjoined from disclosing any trade secrets or confidential information of S.G. Cowen Securities Corporation. Furthermore, respondent is preliminarily enjoined from soliciting any clients that he obtained while employed by petitioner.

SO ORDERED.

END OF DOCUMENT