# Exhibit 21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
PART 57
---------------------------------------x     Index No. 121077/00

SALOMON SMITH BARNEY INC.,

        Plaintiff(s),

    -against-     DECISION/ORDER

DAVID HUNTER and MARK STANCZYK,

        Defendant(s).

---------------------------------------x

Petitioner Salomon Smith Barney Inc. ("SSB") brings this action for a preliminary injunction against respondents Hunter and Stanczyk, financial consultants who resigned from their employment with SSB, effective October 6, 2000, to take employment with Prudential Securities Inc. Petitioner has commenced an arbitration proceeding before the National Association of Securities Dealers, Inc. ("NASD"). In this action, petitioner moves, pursuant to CPLR 7502(c), to restrain respondents, pending determination of the NASD arbitration, from "servicing or accepting any business or account transfers from SSB accounts acquired by reason of improper solicitation facilitated through the use of SSB confidential and/or proprietary information or conduct." Respondents cross-move to stay this action pending the NASD arbitration.

A preliminary injunction will be granted "only where the movant shows a likelihood of success on the merits, the potential for irreparable injury if the injunction is not granted and a balance of equities in the movant's favor (Grant Co. v. Srogi, 52 NY2d 496, 517; McLaughlin.

1

Piven, Vogel v. Nolan & Co., 114 AD2d 165, 172, lv denied 67 NY2d 606)." Chernoff Diamond & Co. v. Fitzmaurice, Inc., 234 AD2d 200, 201 [1st Dept 1996].)

In the instant case, petitioner contends that respondents violated written agreements as well as common law and fiduciary obligations to SSB in that they wrongfully copied and/or retained confidential and proprietary SSB documents, including customer lists and customer account information, and "are undoubtedly soliciting SSB clients to transfer their accounts to Prudential" (Aff. of Frank Albanese In Support, dated Oct. 10, 2000, ¶¶ 5, 12.) Respondents deny that they removed any original files from SSB. They acknowledge that they have client information but contend that this information pertains to their own clients, and that they "have every right to maintain such information." They further contend that they "have no information that originated with Smith Barney nor any information relating to clients of other Smith Barney brokers." (Aff. of David Hunter, dated Oct. 16, 2000, ¶ 15; Aff. Of Mark Stanczyk, dated Oct. 16, 2000, ¶ 18.)

Petitioner fails to make a prima facie showing of likelihood of success on the merits. Contrary to petitioner's contention, neither respondent is subject to a restrictive covenant. Petitioner argues that Stanczyk, though not Hunter, signed employment agreements containing restrictive covenants which bar Stanczyk's solication of clients he serviced while at SSB. However, neither of the two agreements signed by Stanczyk (a Financial Consultant Contract and Franchise Protection Program agreement) is currently in effect.

Nor do the SSB Employee Handbooks show SSB's entitlement to a preliminary injunction. Both respondents signed receipts for an Employee Handbook, dated March 26, 1998, stating that they "agree[d] to be bound by the Travelers/Salomon Smith Barney Principles of

2

Employment." The Principles of Employment, in turn, specifically precluded disclosure of confidential or proprietary information to anyone not affiliated with SSB, provided that employees would not take any confidential records upon termination of employment with SSB, and broadly defined confidential and proprietary information so as to include "client documents" and "client lists."

However, the mere fact that the SSB Handbooks defined customer lists or information as confidential will not serve to preclude use of the lists by former employees. Under well settled authority, customer lists will not be protected from use by a former employee absent evidence that the lists were developed as the result of effort and expense on the employer's part and contain information which the employee could not have obtained apart from the employment. (See, McLaughlin, Piven, Vogel v. Nolan & Co., 114 AD2d 165, supra; Town & Country House & Home Serv. v. Newbery, 3 NY2d 554 [1958].)

Even restrictive covenants are not enforceable to protect an employer's "entire client base." (BDO Seidman v. Hirshberg, 93 NY2d 382, 391 [1999].) While a restrictive covenant may be enforceable as to clients who were developed at the employer's expense, such a covenant will not be applied to "personal clients of [the employee] who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts, which [the employer] neither subsidized nor otherwise financially supported as part of a program of client development." (Id., at 393.) Clearly, an Employee Handbook can give an employer no greater protection from a former employee's use of client information than would be tolerated under a restrictive covenant.

Petitioner fails, however, to make a showing of likelihood of success on the merits of its claim that the clients serviced by respondents were developed as a result of SSB's effort and

3

expense. Petitioner's claim that it developed the customer lists whose use it seeks to enjoin is based on the wholly conclusory assertion that it spent millions of dollars on advertising and mailings to potential clients. (Albanese Aff., ¶ 41.) Petitioner does not deny respondents' claim that they brought with them virtually all or most of their existing clients when they left other brokerage firms to join SSB. Moreover, petitioner does not deny respondent Hunter's claim that only 20 percent of his clients were opened at SSB, or respondent Stanczyk's claim that a substantial portion of his clients were clients he had prior to his employment with SSB. (Hunter Aff., ¶ 10; Stanczyk Aff., ¶ 12).[1]

Nor does petitioner show that the equities preponderate in its favor. Petitioner does not dispute respondents' averments that at the time they joined SSB, SSB requested copies of the account statements for their clients from their prior firms, and that SSB sent "welcome letters" to all of respondents' existing clients along with account transfer forms. (Hunter Aff., ¶ 8; Stanczyk Aff., ¶ 12.) SSB's failure to deny that it engaged in such conduct raises serious questions as to whether SSB is barred by the doctrine of unclean hands from seeking equitable relief from this Court. (See, Salomon Smith Barney Inc. v. Vockel, US Dist Ct, ED Pa, May ___, 2000, Bartle, J., 2000 US Dist Lexis 6167.)

The court further holds that SSB fails to show that it will suffer irreparable injury if a

---

[1] Questions as to whether SSB itself regards customer information as confidential are raised by its failure to explain the certifications of Robert Calabrese and William Leahey, apparently submitted in prior litigation, opposing enforcement by another brokerage firm of a restrictive covenant in an employment agreement signed by a broker hired by SSB's predecessor. In these statements, SSB's predecessor took the position that account executives "almost always take virtually all of their customers with them to their new firm," that they have a right to take a copy of account information with them, and that this information is not in fact "a 'customer list' or proprietary confidential information of Smith Barney" but "belongs to the customers themselves." Calabrese Aff., ¶¶ 8, 15."

4

preliminary injunction is not granted. Petitioner has an adequate remedy at law, as any loss of client business may be adequately addressed by money damages. (See, Merrill Lynch, Pierce, Fenner & Smith v. DeLiniere, 572 F Supp 246 [ND Ga 1983]; Morgan Stanley Dean Witter v. Petit, US Dist Ct, ND Ga, 99-CV-2292, Sept. 10, 1999, Hunt, J.)

IT IS ACCORDINGLY HEREBY ORDERED, that the temporary restraining order, rendered on October 11, 2000, is hereby vacated; and it is further

ORDERED, that petitioner's motion for a preliminary injunction is denied without prejudice to petitioner's right, if so advised, to seek injunctive relief before the NASD; and it is further

ORDERED, that respondents' cross-motion is denied as moot.

This constitutes the decision and order of this Court.

Dated: New York, New York
November 1, 2000

/s/
_____
MARCY FRIEDMAN, J.S.C.